**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SCOTT A. BAYMILLER et al.,

    Plaintiffs,

v.

RANBAXY PHARMACEUTICALS, INC., et al.,

    Defendants.

3:11-cv-858-RCJ-VPC

**ORDER**

Currently before the Court are four motions to dismiss (#13, 31, 33, 34). The Court heard oral argument on April 23, 2012.

## BACKGROUND

In November 2011, Defendant Glaxosmithkline LLC filed a petition for removal and attached the complaint from the Second Judicial District Court in Washoe County, Nevada. (Pet. for Removal (#1); Compl. (#1) at 11-27). In the complaint, Plaintiffs Scott A. Baymiller, Kathleen Lynn Baymiller, Mary Arlayne Baymiller, and Scott A. Baymiller as the Co-Special Administrator of the Estate of Charles Alan Baymiller (collectively "Plaintiffs") sued Defendants Ranbaxy Pharmaceuticals, Inc., Aurobindo Pharma USA, Teva Pharmaceutical USA, Glaxosmithkline LLC ("Glaxo"), CVS Pharmacy, Inc., and Rite Aid Corporation (collectively "Defendants"). (Compl. (#1) at 11).

The complaint alleged the following. (*Id.* at 12). Scott Baymiller and Kathleen Baymiller were the son and daughter of Mary Baymiller and Charles Baymiller, deceased. (*Id.*). Mary Baymiller was the surviving wife of Charles Baymiller. (*Id.*). Ranbaxy was a corporation that had engaged in the design, manufacture, production, testing, study, research, mixture,

labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including Lorazepam, which was used to treat anxiety, acute seizures, and insomnia. (*Id.* at 13). Aurobindo was a corporation that had engaged in the design, manufacture, etc. of Paroxetine HCL, which was used to treat depression, obsessive-compulsive disorder, panic disorder, and anxiety. (*Id.*). Teva was a corporation that had engaged in the design, manufacture, etc. of Paroxetine HCL. (*Id.*). Glaxo was a corporation that had engaged in the design, manufacture, etc. of Paxil, which was used to treat depression, obsessive-compulsive disorder, and anxiety disorder. (*Id.* at 13-14). CVS was a corporation that was engaged in the sales and/or distribution of Lorazepam, Paroxetine HCL, and Paxil in Nevada. (*Id.* at 14). Rite Aid was a corporation that had engaged in the sales and/or distribution of Paroxetine HCL in Nevada. (*Id.*).

The complaint alleged the following. Since 1992, Glaxo had promoted and advertised and made claims and representations to the medical profession and general public that Paxil was a "safe and effective drug for treatment of depression" (*Id.* at 15). Paroxetine HCL, as manufactured by Aurobindo and Teva, was the generic equivalent to Paxil. (*Id.*). Aurobindo and Teva had sold Paroxetine HCL to CVS and Rite Aid pursuant to a sales contract. (*Id.*).

The complaint alleged the following. Upon information and belief, studies had been conducted and were "available to Defendants showing that Paxil, and its generic Paroxetine HCL, [could] cause extrapyramidial reactions including akathisia associated with violence, self-harm, and psychotic eposides." (*Id.*). Defendants were aware of the documented increased instances of violence both to oneself and others. (*Id.*).

The complaint alleged the following. Ranbaxy had sold and distributed Lorazepam, a generic equivalent to Ativan. (*Id.*). Ranbaxy had sold Lorazepam to CVS pursuant to a sales contract. (*Id.*). Prior to October 4, 2009, there existed sufficient studies that were available to Defendants to make them aware of the side effects of mixing Lorazepam and Paroxetine HCL. (*Id.* at 15-16). Prior to October 4 or 5, 2009, Defendants had designed, manufactured, packaged, and sold Paroxetine HCL and/or Lorazepam. (*Id.* at 16). Upon information and belief, "Defendants [were] responsible for placing said product in the hands of users"

particularly Mary Baymiller on October 4 or 5, 2009. (*Id.*). Defendants had placed a defective and unreasonably dangerous product or combination of products, i.e. Paroxetine HCL and Lorazepam, in the hands of Mary Baymiller without adequate warnings concerning its safe and proper use. (*Id.*). On October 4 or 5, 2009, while under the influence of prescribed Lorazepam and Paroxetine HCL individually and/or in combination and "in a state of somnambulism, while under the associated side effect of the drugs, did use force and violence upon her husband," Charles Baymiller, to cause his death on October 5, 2009, and to cause self harm and violence to herself. (*Id.*).

The complaint alleged the following. Defendants had a duty and were required to warn about the serious hazards associated with the drugs individually and in combination with other drugs as soon as there was "reasonable evidence of association." (*Id.*). Defendants' U.S. packaging inserts and marketing materials had failed to warn about the associated risks of homicidal behaviors or acts of violence toward others. (*Id.*).

The complaint alleged seven causes of action against Defendants. (*Id.* at 17-25). In the first cause of action, Plaintiffs alleged strict products liability (unreasonably dangerous product) because Defendants had placed Lorazepam and Paroxetine HCL, defective and unreasonably safe products, in Nevada which failed to perform in the manner reasonably to be expected in light of their nature and intended function. (*Id.* at 17-18). It was unreasonably dangerous for Defendants to put those products in the hands of Mary Baymiller when the product was known to cause episodes of violence, akathisia, and self-inflicted harm. (*Id.* at 18). Defendants were aware that Paroxetine HCL was unsafe in some patients and could cause psychotic episodes of violence. (*Id.*).

In the second cause of action, Plaintiffs alleged strict products liability (inadequate warnings) because neither Lorazepam nor Paroxetine HCL were accompanied by complete and proper warnings for safe, informed use. (*Id.* at 18-19). Defendants had failed to warn users of the inherent dangers of Lorazepam or Paroxetine HCL. (*Id.* at 19).

In the third cause of action, Plaintiffs alleged negligence. (*Id.*). Defendants owed Plaintiffs, the general public, medical professionals, and pharmacists a duty of care to

3

manufacture a safe drug, to distribute a safe drug, to sell a safe drug, to adequately warn users of the dangers, risks, and side effects, to adequately warn medical professionals and pharmacists of the dangers, to warn users of the safe and proper methods of taking the drugs, and not to represent that the drugs were safe individually or in combination with another when they were not. (*Id.* at 19-20). Defendants breached their duties to Plaintiffs. (*Id.* at 20). Prior to October 5, 2009, Mary Baymiller had been prescribed Lorazepam and Paroxetine HCL by a nurse practitioner. (*Id.*). After using the drugs, Baymiller informed her treatment provider that her symptoms were not correcting. (*Id.*). The treatment provider increased Mary Baymiller's dosages on September 21, 2009. (*Id.*). Plaintiffs believed that the increased dosages of Lorazepam and Paroxetine HCL individually and/or in combination caused Mary Baymiller to carry out akathisic homicidal behaviors, including the stabbing of her husband with several knives and also caused her self-inflicted injuries. (*Id.*). Defendants failed to adequately warn medical professionals and pharmacists of the dangers associated with those drugs, failed to properly investigate known dangers and side effects of those drugs, failed to warn ultimate users as to the safe and proper methods of taking those drugs, failed to make users and health care providers aware of the level of sophistication and delicate balances regarding psychoactive drugs, negligently and carelessly represented that the drugs were safe individually and in combination with each other, failed to act as a reasonably prudent drug manufacturer, distributor, seller, and/or pharmacy, and failed to warn of the homicidal risks associated with the drugs. (*Id.* at 21).

In the fourth cause of action, Plaintiffs alleged breach of implied warranty because Defendants had marketed, sold, licensed, manufactured, warranted, and represented to healthcare providers and product users that the drugs were safe and efficacious. (*Id.* at 22). Mary Baymiller had used Lorazepam and/or Paroxetine HCL in accordance to her healthcare providers' recommendations and instructions in the manner Defendants had intended. (*Id.*). Lorazepam and/or Paroxetine HCL had the implied warranties of merchantable quality, fit for primary purpose, fit for particular purpose, were not defective, and were safe and efficacious. (*Id.* at 22-23).

In the fifth cause of action, Plaintiffs alleged breach of express warranty because Defendants had warranted that the drugs were safe, effective, or proper for their intended uses, but they were dangerous when put to their intended use. (*Id.* at 23-24).

In the sixth cause of action, Plaintiffs alleged fraud upon purchaser and misrepresentation, pursuant to NRS § 41.600. (*Id.* at 24). Defendants knew or should have known about the risks associated with use of Lorazepam and/or Paroxetine HCL but they failed to take any steps to alert the healthcare community or users to the unreasonable risks. (*Id.* at 24-25). Defendants' actions amounted to fraud because they mis-characterized or misrepresented adverse events and side effects, failed to conclusively study the effects of akathisia by users of the drugs, failed to inform medical and research communities of studies or incidents of violence, self-harm, and/or hypomania, failed to properly conduct research into the effects of the drugs on elderly patients, failed to properly inform the healthcare community and users of potential additive effects of the combined use of the drugs, and aggressively promoted the drugs to non-psychiatric healthcare providers while acknowledging that a general practitioner's knowledge and training was inadequate to safely and effectively prescribe those drugs. (*Id.* at 25).

In the seventh cause of action, Plaintiffs alleged statutory abuse and neglect pursuant to NRS § 41.1395. (*Id.* at 25-26). Defendants conduct constituted abuse, per the statute, of a person older than 60 years of age. (*Id.* at 26). Both Mary and Charles Baymiller were older than 60 years old. (*Id.*).

This Court granted the parties' stipulations to dismiss Defendants Ranbaxy Pharmaceutical, Inc., Teva Pharmaceuticals USA, Inc., and Aurobindo Pharm USA, Inc. with prejudice from this case. (Orders (#43, 48, 55)). As such, the Court denies as moot Ranbaxy's motion to dismiss (#31). The Court also denies as moot Teva Pharmaceuticals' motion to dismiss (#13). However, the Court notes that Teva Pharmaceuticals and Rite Aid filed a joint motion to dismiss (#13). The Court will address Rite Aid's motion to dismiss (#13) in this order.

*///*

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass muster under 12(b)(6) consideration, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor

does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**DISCUSSION**

**I.     Rite Aid Corporation's Motion to Dismiss (#13)**

Rite Aid argues that Plaintiffs' claims against it are derivative based on Rite Aid's sale of Teva's generic paroxetine product. (Mot. to Dismiss (#13) at 14). Rite Aid argues that there are no allegations or causes of action that specifically identify Rite Aid and there are no independent bases of liability alleged against it. (*Id.*). Rite Aid asserts that because the substantive claims against Teva should be dismissed pursuant to *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2570, 180 L. Ed. 2d 580 (2011), the derivative claims against it should also be dismissed. (*Id.* at 6-8, 14).

In response, Plaintiffs assert that they have valid claims of negligence, breach of warranty, and failure to warn against Rite Aid. (Opp'n to Mot. to Dismiss (#36) at 3). Plaintiffs assert that *Mensing* is only applicable to generic drug companies and that pharmacists have an affirmative duty to inform customers of known drug interaction issues and hazards. (*Id.*). Plaintiffs argue that, in Nevada, pharmacists have an affirmative duty to warn customers and prescribing doctors of specific side effects and adverse interactions. (*Id.* at 6).

In reply, Rite Aid argues that there are no allegations in the complaint that Rite Aid had knowledge of a customer-specific risk related to Mary Baymiller's use of paroxetine and, therefore, had no duty to warn her in this case. (Reply to Mot. to Dismiss (#38) at 2). Rite Aid

argues that, in Nevada, pharmacies do not have a duty to act to prevent a customer from injuring a third party. (*Id.* at 5).

In *Klasch v. Walgreen Co.*, 264 P.3d 1155 (Nev. 2011), the Nevada Supreme Court addressed the duty of care that a pharmacist owes his or her customers. *Id.* at 1156. In doing so, the Nevada Supreme Court explicitly adopted the learned-intermediary doctrine in the context of pharmacist/customer tort litigation and held that pharmacists have no duty to warn of a prescribed medication's generalized risks inherent in the prescriptions they fill. *Id.* at 1157-59. This doctrine "prevents pharmacists from constantly second-guessing a prescribing doctor's judgment simply in order to avoid his or her own liability to the customer." *Id.* at 1159. However, when a pharmacist has knowledge of a customer-specific risk, the pharmacist has a duty to exercise reasonable care in warning the customer or notifying the prescribing doctor of the customer-specific risk. *Id.* at 1158, 1160.

In this case, the Court grants Rite Aid's motion to dismiss all claims stated against it without leave to amend. There is nothing in the complaint that alleges that Rite Aid had any knowledge of customer-specific risks related to Mary Baymiller. As such, Rite Aid had no duty to warn Mary Baymiller of the generalized risks inherent in her Lorazepam and Paroxetine HCL prescriptions. Moreover, the Court notes that there are no allegations in the complaint that Rite Aid even sold Lorazapam. (*See* Compl. (#1) at 15). As such, the Court GRANTS Rite Aid's motion to dismiss (#13) in its entirety.

**II.    CVS Pharmacy's Motion to Dismiss (#33, 34)**[1]

CVS argues that the Court should dismiss all claims against it because the learned-intermediary doctrine prevents an action against CVS as a matter of law. (Errata to Mot. to Dismiss (#34) at 4).

---

[1] On December 19, 2011, CVS Pharmacy filed its original motion to dismiss. (*See* Mot. to Dismiss (#33)). On December 20, 2011, CVS Pharmacy filed an errata to its motion to dismiss stating that the errata was the final version of the motion to dismiss rather than the previous one. (*See* Errata to Mot. to Dismiss (#34) at 1). As such, this Court will cite to the errata when discussing CVS's motion to dismiss.

Plaintiffs filed a response and CVS filed a reply. (Opp'n to Mot. to Dismiss (#49); Reply to Mot. to Dismiss (#54)).

The Court grants CVS's motion to dismiss (#33, 34) all claims stated against it for the same reasons stated above. There is nothing in the complaint that alleges that CVS had any knowledge of customer-specific risks related to Mary Baymiller. As such, CVS had no duty to warn Mary Baymiller of the generalized risks inherent in her Lorazepam and Paroxetine HCL prescriptions.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Teva Pharmaceuticals USA, Inc. and Rite Aid Corporation's Motion to Dismiss (#13) is DENIED as moot in part and GRANTED in part. The Court DENIES as moot Teva Pharmaceuticals USA, Inc.'s motion to dismiss (#13). The Court GRANTS Rite Aid Corporation's Motion to Dismiss (#13) in its entirety without leave to amend.

IT IS FURTHER ORDERED that Ranbaxy Pharmaceutical Inc.'s Motion to Dismiss (#31) is DENIED as moot.

IT IS FURTHER ORDERED that CVS Pharmacy, Inc.'s Motion to Dismiss (#33, 34) is GRANTED in its entirety without leave to amend.

The Clerk of the Court shall enter judgment accordingly.

DATED: This 6th day of July, 2012.

_____
United States District Judge